UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RYAN WHITE                                CIVIL ACTION

VERSUS                                    19-10389

NEW ORLEANS & GULF                        SECTION: "J" (1)
COAST RAILWAY COMPANY

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 18)** filed by Defendant New Orleans & Gulf Coast Railway Company. Plaintiff Ryan White opposes the motion (Rec. Doc. 20), and Defendant filed a reply (Rec. Doc. 25). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**, as explained herein.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from injuries allegedly sustained by Plaintiff while employed by Defendant at the Chevron Oronite Oak Point Plant in Belle Chasse, Louisiana. On July 9, 2018, Plaintiff was working as a conductor when he began to experience pain in his left shoulder.[1] He promptly reported this injury to his supervisor, Kurt Nastasi, who did not offer Plaintiff any medical treatment.[2] The next day, Plaintiff returned to work and continued to experience shoulder pain, which he

---

[1] (Rec. Doc. 21-2, at 43-44).
[2] *Id.* at 45, 47.

again reported to Nastasi.³ The following day, July 11, Plaintiff again experienced pain while working and reported it to Nastasi, who instructed him to report it to the general manager.⁴ However, Plaintiff believed the general manager had left for the day, so he continued working and submitted a statement to his general manager the following morning, July 12.⁵ Nastasi also submitted a statement that same day, in which he stated that Plaintiff "has stated many times the past few months that his shoulder has been bothering him from time to time" and "has been complaining of having to switch the Chevron Plant by himself and stated that his shoulder would not hold up the duration of this bid season."⁶

As a result of this incident, Plaintiff was diagnosed with "gross horizontal or medial instability of the distal clavicle" and recommended to have AC ligament reconstruction surgery.⁷ It is undisputed that Plaintiff suffered a prior injury to his left shoulder in March 2015 that required surgery and was not work related, and that he reinjured or aggravated the injury to his left shoulder in work-related incidents in July 2015, March 2016, November 2016, and May 2017.⁸

Plaintiff filed his complaint on May 14, 2019, bringing claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* He claims that his injuries were caused by various negligent acts of Defendant, or in the alternative, that his preexisting injury was aggravated by Defendant's negligence. Defendant

---

³ *Id.* at 47-48.
⁴ *Id.* at 52.
⁵ (*Id.*; Rec. Doc. 21-4).
⁶ (Rec. Doc. 21-5).
⁷ (Rec. Doc. 21-8, at 4).
⁸ (Rec. Doc. 21-2, at 30, 33, 36-37, 39,

2

filed the instant motion for summary judgment on December 1, 2020. Defendant contends that Plaintiff cannot demonstrate it acted negligently because the undisputed evidence shows it provided Plaintiff with a reasonably safe place to work. Additionally, Defendant asserts that Plaintiff's claims are preempted by federal regulations. The motion is before the Court on the briefs without oral argument.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Plaintiff's claim for relief arises exclusively under FELA,[9] which allows an injured railroad employee to recover damages for "injury or death resulting in whole or in part from the negligence of" the railroad. 45 U.S.C. § 51; *see Huffman v. Union Pac. R.R.*, 675 F.3d 412, 416 (5th Cir. 2012). "To prevail under FELA, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." *Weaver v. Mo. Pac. R.R. Co.*, 152 F.3d 427, 429 (5th Cir. 1998) (cleaned up) (citation omitted). A railroad must provide its employees with a reasonably safe work environment, and a railroad is considered negligent under FELA if it knew, or should have known, that its conduct was inadequate to protect its employees. *Huffman*, 675 F.3d at 417 (citing *Urie v.*

---

[9] 45 U.S.C. § 51 provides:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering an injury while he is employed by such carrier in commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. . . .

4

*Thompson*, 337 U.S. 163, 178-79 (1949)). This duty includes the "duty to assign an employee to work for which he or she is reasonably suited." *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004). A railroad breaches this duty if it "knew or should have known of the employee's diminished work capacity and, in spite of that knowledge, . . . continued to assign the employee to tasks it knew or should have known would aggravate his or her physical condition." *Id.*

The causal standard under FELA is "very low" compared to the traditional negligence proximate cause standard. *Romero v. CSX Transp., Inc.*, No. 06-1783, 2008 WL 5156677, at *3 (D.N.J. Dec. 9, 2008). FELA "departs from common law negligence principles, making recovery easier to obtain than under a traditional negligence standard." *Id.* (citing *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958)). Under FELA, railroads are liable for an employee's injuries or death if the railroad "played *a part*—no matter how small—in bringing about the injury." *Huffman*, 675 F.3d at 417 (emphasis added) (quoting *CSX Transp., Inc. v. McBride*, 564 U.S. 685 (2011)). Thus, a plaintiff's burden of proof under FELA has been described as "featherweight," *Rivera*, 378 F.3d at 506, and a plaintiff's FELA claim should be dismissed on summary judgment "'only when there is a complete absence of probative facts'" supporting the plaintiff's position. *Gray v. Ala. Great S. R.R. Co.*, 960 F.3d 212, 216 (5th Cir. 2020) (brackets omitted) (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).

Finally, under FELA, an employee's contributory negligence will not bar recovery but may be considered to diminish recovery in proportion to the employee's

fault. *Romero*, 2008 WL 5156677, at *3 (citing 45 U.S.C. § 53; *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 167 (2007)). The defense of assumption of risk is completely eliminated. *Id.* (citing 45 U.S.C. § 54; *Tiller v. Atlantic Coast Line R.R. Co.*, 318 U.S. 54, 58 (1943)).

As an initial matter, the parties disagree about the proper framing of Defendant's duty. To repeat: Defendant has a "duty to create a reasonably safe work environment." *Rivera*, 378 F.3d at 507. This includes the "duty to assign an employee to work for which he or she is reasonably suited," *id.*, and the duty "to provide its employees with sufficient help in the performance of the work assigned to him." *Yawn v. S. Ry. Co.*, 591 F.2d 312, 315 (5th Cir. 1979).

Defendant contends that it lacked knowledge of Plaintiff's physical limitations. Specifically, it argues that because Plaintiff was released back to work with no restrictions after his prior aggravations of his previous injury (between July 2015 and May 2017), it had no reason to know that Plaintiff was unfit for his assigned task in July 2018. However, this contention is clearly undercut by Nastasi's accident statement, in which he claimed that Plaintiff "has stated many times the past few months that his shoulder has been bothering him from time to time" and "has been complaining of having to switch the Chevron Plant by himself and stated that his shoulder would not hold up the duration of this bid season."[10] Defendant attempts to avoid addressing this evidence by pivoting to argue that Plaintiff's claim fails because he did not request an alternative work assignment. However, whether Plaintiff

---

[10] (Rec. Doc. 21-5).

6

requested a transfer is not dispositive, as the issue is whether Defendant should have known of Plaintiff's limitations. *Cf. Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1121 (5th Cir. 1983) (holding no negligent assignment where plaintiff neither applied for a transfer nor told his employer that his work was causing his ankle problem).

Plaintiff supplements Nastasi's statement with emails between Defendant's employees expressing concern over whether Plaintiff should return to work, notwithstanding the authorization by his physician, following his injuries in November 2016 and May 2017.[11] This evidence suggests that Plaintiff's injury was reasonably foreseeable to Defendant based on what it knew at the time, *see Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 117-18 (1963), and, given Plaintiff's "featherweight" burden of proof, is enough to survive summary judgment.[12]

Defendant also argues that Plaintiff's claims are precluded by the Federal Railroad Safety Act ("FRSA"). Defendant contends that the Federal Railroad Administration ("FRA") specifically considered whether to regulate train crew staffing or require light duty work assignments in certain situations and declined to do so. Defendant asserts that these decisions not to regulate preclude any FELA claims for the covered conduct.

State law claims may be preempted by FRA regulations, *see CSX Transp. v. Easterwood*, 507 U.S. 658, 663 (1993), as well as an affirmative decision to not issue regulations, *see King v. Ill. Cent. R.R.*, 337 F.3d 550, 557 (5th Cir. 2003). The *King*

---

[11] (Rec. Doc. 21-12).
[12] The Court construes Plaintiff's claim for failure to provide him with a light duty position as subsumed by the negligent assignment claim and therefore does not analyze it separately, except for the preclusion argument discussed below.

7

court explained that such preemption was appropriate where it was clear that "the FRA examined the issue and decided it should not promulgate regulations" addressing that issue. *Id.* Further, the Fifth Circuit, relying on *Easterwood*, has held that a FELA claim may be precluded[13] by FRA regulations. *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001). In *Lane*, the court explained that preclusion was necessary to realize "Congress' intent that railroad safety regulations be nationally uniform to the extent practicable" and that dissimilar treatment of state law and FELA claims "would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless" because "[t]he railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct." *Id.* (internal quotation marks and citation omitted).

Based on this reasoning, the Court concludes that FELA claims may be precluded where the FRA has "fully considered" an issue and "determined that [it] does not involve safety." *King*, 337 F.3d at 557 (internal quotation marks and citation omitted). Accordingly, the Court finds that Plaintiff's crew staffing claim is precluded.

The FRA issued a notice of proposed rulemaking in 2016 concerning train crew staffing but withdrew it in 2019, finding that "no regulation of train crew staffing is necessary or appropriate for railroad operations to be conducted safely at this time."

---

[13] State law claims are subject to preemption, while federal claims are subject to preclusion. Additionally, claim preclusion, or *res judicata*, is an entirely distinct issue from the preclusion discussed here.

Train Crew Staffing, 84 Fed. Reg. 24735 (withdrawn May 29, 2019).[14] The notice continues: "[T]his notice of withdrawal provides FRA's determination that no regulation of train crew staffing is appropriate and that FRA intends to negatively preempt any state laws concerning that subject matter." *Id.* at 24741. Therefore, Plaintiff's crew staffing claim must also be precluded to ensure that "railroad safety regulations be nationally uniform to the extent practicable." *Lane*, 241 F.3d at 443.

Defendant also contends that Plaintiff's light duty claim, to the extent it is distinguishable from his negligent assignment claim, is precluded, pointing to the "Medical Standards for Railroad Workers" report conducted by the FRA and relied on by Plaintiff. This report notes that some railroads, such as Belt Railway of Chicago, use light duty to accommodate employees following an injury or illness.[15] Moreover, the report did not conclude that regulation was unwarranted but that "the FRA should proceed with the development of a medical standards program."[16] Thus, Defendant has failed to show that "the FRA examined the issue and decided it should not promulgate regulations for" light duty accommodations. *King*, 337 F.3d at 557.

Finally, Defendant seeks summary judgment on Plaintiff's claim that it violated its own rules and regulations intended to ensure Plaintiff's safety. Plaintiff claims that Nastasi, his supervisor, failed to report Plaintiff's injury to the terminal manager, while Defendant contends Nastasi was not required to report anything because Plaintiff was only complaining of pain and not an injury.

---

[14] (*See* Rec. Doc. 18-14).
[15] (Rec. Doc. 18-11, at 95, 98-99, 101).
[16] *Id.* at 3.

At his deposition, Nastasi testified to the following:

Q Okay. Now, is it part of your responsibility to report those types of things up the chain of command, if you're hearing an employee complain about pain or shoulder pain or something else?

A Yeah.

. . . .

Q Okay, and we didn't get into too many details about it, but what's the protocol about when to complete an injury report?

A Usually within 24 hours of the incident.[17]

Additionally, Dr. Felix Savoie, to whom Plaintiff was referred by Defendant for a second medical opinion, described Plaintiff's condition as a "work injury" and stated that "he injured his shoulder at work."[18] Therefore, at the least, there is a dispute as to whether Plaintiff suffered an "injury" that Defendant's employees were required to report, and summary judgment is inappropriate for this claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 18)** is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Plaintiff's crew staffing claim. The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendant's *Omnibus Motion in Limine* **(Rec. Doc. 28)** is **DENIED** because it raises arguments substantially similar to those

---

[17] (Rec. Doc. 21-9, at 15).
[18] (Rec. Doc. 21-8, at 1).

discussed herein and because it is an untimely challenge to Plaintiff's expert witness.[19]

New Orleans, Louisiana, this 6th day of April, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[19] The deadline for filing motions to exclude expert testimony was December 1, 2020; the motion was filed on January 15, 2021.